**SO ORDERED.**

**SIGNED this 25 day of September, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

**OPINION DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:                        )

JEFFREY P. HOULIK,      )     Case No. 09-12159
CHARLA L. HOULIK,       )     Chapter 11
                                      )
              **Debtors.**      )
_____)

## MEMORANDUM OPINION

The debtors, Jeffrey and Charla Houlik, filed their motion for an order to show cause "why stay violation should not be entered," (Motion) after Santander Consumer, USA, Inc., (Santander) caused Mr. Houlik's work truck to be repossessed in December of 2010.[1] In the Motion, the Houliks

_____

[1] Dkt. 124. The mischaracterization of this motion as one for a stay violation will be addressed below. Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* as amended.

-1-

also asked that the truck be returned to them and that they recover their damages and attorney's fees. Santander succeeded the Houliks' original lender, CitiFinancial, as the servicer of the truck loan. The loan had been addressed and restructured in the Houliks' confirmed chapter 11 plan. The Court conducted an evidentiary hearing on the Motion and after receiving post-trial briefs from the parties, is now ready to rule.[2]

Facts

In 2005, the Houliks signed a retail sales installment agreement with a local dealership. Under the agreement, they purchased a used 2005 Dodge Ram pickup truck for $37,256 and granted the dealership a security interest in the vehicle to secure repayment. The dealer assigned the contract to CitiFinancial Auto, Ltd. Mr. Houlik is a self-employed home contractor who uses the pickup in his work. When the Houliks fell on hard times in July of 2009, they filed this chapter 11 case. They filed a chapter 11 plan that October, in which they proposed to allow Citi's secured claim in the amount of $17,305 and to repay that amount in monthly payments of $343.[3] Citi did not object to the plan and it was confirmed on December 29, 2009.[4]

In the "Implementation" section of the Houliks' chapter 11 plan, they state:

Upon confirmation of the Reorganization Plan, all assets of the Debtors, with the exception of avoidance actions under 11 U.S.C. §547 and 11 U.S.C. §548, will be revested or reassigned to Jeffrey P. Houlik and Charla L. Houlik. *The Debtors shall also be discharged of all obligations* except as otherwise required under the

---

[2] Attorney Jeffrey W. Rockett appeared for the Houliks. Attorney Nelson Mitten appeared for Santander. The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 157(b)(1) and § 1334.

[3] Dkt. 61.

[4] On October 4, 2010, a final decree was entered in the case pursuant to Fed. R. Bankr. P. 3022. *See* Dkt. 115.

-2-

Disclosure Statement and Reorganization Plan.[5]

That is the only reference to a discharge in the plan. Their disclosure statement is silent on the topic. The confirmation order recites that "[n]othing in this order or the Plan shall operate as a discharge of the debtors from Claims, obligations or liabilities to be paid or performed under the Plan . . . ."[6] To the extent the Plan operated to grant a confirmation-day discharge, it represents a departure from the Bankruptcy Code provision that governs chapter 11 discharges for individual debtors, § 1141(d)(5).

After the plan was confirmed, Citi assigned the servicing of this claim to Santander in September of 2010. The Houliks made all of the post-confirmation payments until Santander repossessed the truck at 9:30 p.m. on December 27, 2010, after a confrontation at the Houliks' home in which Santander's repossession agent, Darryl Johnson, pushed Mr. Houlik away from the truck and denied him access to its contents and keys in the course of taking it.

At the time the truck was taken, Mr. Houlik had bid several projects that he says he could not execute without his truck. Without the truck, he could not tow his tool trailer. When Johnson took the truck, he would not let Houlik recover his keys from the vehicle which resulted in Houlik being unable to access the rented storage facility where he stored his equipment. Despite the Houliks' and their counsel's best efforts, the truck was not returned until March 17, 2010, some 80 days after it was wrongly repossessed.

Houlik testified that he lost work opportunities while his truck was gone, but he could not quantify those opportunities. He also claims that the truck was returned to him in a damaged state.

---

[5] Dkt. 61, p. 9, emphasis added.

[6] Dkt. 92, p.7.

-3-

In support of that claim, he supplied some estimates from a body shop. He also claims that he should be reimbursed for various overhead expenses incurred by his business while he could not work, including auto insurance premiums he paid during the time period he was deprived of the truck. These expenses will be discussed in more detail in the analysis portion below.

Santander's corporate representative, Mark Mooney, testified that Santander notified the Houliks that it had become the servicer in September of 2010 and that Santander gave the Houliks a statutory notice to cure on October 26, 2010.[7] According to Exhibit 10, Citi executed a limited power of attorney in September of 2010 that authorized Santander to collect and enforce all of Citi's automobile loans receivable. Mooney stated that Santander's system showed that the Houliks had missed two payments, though neither his company's records nor the Houliks' testimony or documents bear this out.[8] Even more troubling, the cure notice dated October 26, 2010 claimed the amount of $6,188.92 was due and threatened to hold the Houliks "personally responsible" for any deficiency upon repossession and sale.[9] The notice to cure was mailed to the Houliks' former address on Rutland in Wichita, a home they had vacated nearly a year before.[10] There was no direct

---

[7] Ex. 3. While the cure notice was introduced as Exhibit 3, Santander presented no exhibit evidencing its notification to the Houliks that it was the servicer of their Citi loan.

[8] Some of the correspondence between debtors' counsel and Santander after the repossession reveals that Santander claimed the Houliks missed their August 2010 and December 2010 plan payment. *See* Ex. W and X.

[9] *See* Ex. 3. As noted previously, two plan payments of $343 would constitute a default amount of $686, not $6,188.92. This suggests that Santander was pursuing the Houliks for pre-petition, pre-confirmation debt.

[10] The court's docket indicates that the Houliks filed two applications to sell this house, one in July of 2009, and the other in April of 2010. An order granting the second motion was entered on April 5, 2010 and, presumably, the sale was closed on or about April 7, 2010 as indicated in the second sale contract. *See* Dkt. 103-1, 104.

evidence indicating whether or when the debtors told Citi or Santander that their address had changed. The Court notes, however, that Mrs. Houlik mailed each monthly payment to CitiFinancial in the form of a check which contained the Houliks' new address on Foster and submitted under cover of a remittance advice that contained the same address. Exhibit B contains copies of each check and advice. It appears that Mrs. Houlik mailed a check monthly commencing in November of 2009, shortly before the plan was confirmed, through November, 2010, demonstrating not only that she made all of the post-confirmation payments as they became due, but also that CitiFinancial and its attorney in fact, Santander, had notice of the Houliks' new address as early as November of 2009.

Santander detained the vehicle nearly three months despite the debtors' and their counsel's efforts. On December 28, 2010 and January 4, 2011, debtors' counsel wrote to Santander and demanded return of the vehicle.[11] On January 17, counsel wrote to Marilyn Washburn of Reizman Berger who frequently serves as counsel for Santander in this Court, and requested relief.[12] Nine days later, the law firm responded that it had not been assigned this matter, but would forward the information to Santander. Meanwhile, on January 5, 2011, the Houliks' counsel moved to reopen this case so that this Motion could be filed.[13] After the case was reopened on February 4, the Houliks filed this Motion and set it for hearing on March 10, 2011.[14] The Motion was served on Santander's Kansas registered agent, The Corporation Company, and on Santander at its post office

---

[11] Ex. V.

[12] Ex. X.

[13] Dkt. 119.

[14] Dkt. 124.

-5-

box at Fort Worth, Texas.[15] When Santander failed to object, the Court entered a default order for turnover and damages on March 9, 2011.[16] The vehicle was returned on March 17, but Santander filed a motion to vacate the damages order for lack of service on March 23.[17] Only after the notice of this hearing was mailed to the Houliks at their Rutland address and returned with the notation "forwarding order expired" did they change their address with the Court.[18] On May 26, this Court convened a hearing at which Santander argued that while The Corporation Company was its registered agent, Santander had not received notice of the Motion. Therefore, the Court directed that the previous turnover order be vacated and that the Motion be set for evidentiary hearing on July 19.[19] To date, Santander has yet to submit an order memorializing that relief.

Neither Santander's representative Mr. Mooney, nor its counsel demonstrated any regret or remorse about the improper repossession of the truck or the delay in its return; nor did Santander proffer a plausible explanation for its conduct. In fact, Mr. Mooney was not even the account officer on the Houliks' loan and his only source of knowledge was by virtue of his review of the file.

Analysis

Where to begin? Debtors move for enforcement of the "stay" to sanction a wrongful repossession of their truck months after their chapter 11 plan was confirmed and consummated and

---

[15] Standing alone, the service to the post office box was insufficient because it was not directed to a managing agent or officer of Santander as required by Fed. R. Bankr. P. 7004(b)(3) and 9014(b).

[16] Dkt. 129.

[17] Dkt. 132.

[18] Dkt. 142 and 143.

[19] Dkt. 144.

after the final decree was entered on October 4, 2010. This requires the Court to first consider whether the § 362 stay remained in effect on December 27, 2010, the date of the repossession, and, if it had expired by then, whether the pleadings in this case can be construed as a request to enforce the discharge injunction contained in the confirmed plan. Finally, if the Court can enforce its discharge injunction via its § 105 contempt power or the provisions of § 524(a) and (i), what should the extent of the Houliks' damages be?

*The Stay Expired at Confirmation*

Section 362(a) imposes a stay against a creditor's enforcement of a prepetition obligation that is effective upon the date of filing. That stay is not, however, eternal. According to § 362(c)(1), when a chapter 11 debtor's plan is confirmed, and if that confirmation vests the estate's property in the reorganized debtor, the stay of any action against that property expires. In any event, the stay terminates for all other purposes in chapter 11 when the case is closed or the individual debtor obtains a discharge, whichever occurs sooner.[20] In this case, the truck revested in the Houliks at confirmation on December 29, 2009, the date their confirmation order was entered. There being no stay in effect in December of 2010, Santander did not violate the stay and cannot be made to answer in damages, leaving the debtors to seek a remedy for Santander's violating their discharge injunction and the clear terms of the confirmed plan.

*Santander Violated § 524(i) and Breached its Obligation to Credit Debtors' Payments*

When a chapter 11 debtor receives a discharge, that discharge relieves the debtor from any

---

[20] Section 362(c)(2). In this case, debtors received a discharge at confirmation on December 29, 2009 and their bankruptcy case was closed October 5, 2010 upon entry of the final decree. Under either trigger date, the stay had terminated before the truck was repossessed on December 27, 2010.

-7-

debt that arose before the date of confirmation.[21] Section 524(a)(2) enjoins any action to collect a discharged debt as a personal liability of the debtor. Section 524(i) makes the willful failure of a creditor to credit payments received under a confirmed plan a violation of the (a)(2) discharge injunction if the act causes material injury to the debtor.

Did the debtors receive a discharge? In its post-trial brief, Santander argues that because the debtors are individuals, they had yet to receive a discharge when Santander took the truck. Since the enactment of BAPCPA in 2005, individuals do not receive a discharge at confirmation unless the Court specifically orders such upon a showing of cause.[22] While Article III of the debtors' plan provided for a confirmation-day discharge, the absence of any mention of the discharge in the "general provisions" section of the plan leaves some question about whether the debtors in fact intended to secure a discharge at confirmation. The confirmation order's language stating that the debtors' obligations under the plan are *not* discharged strengthens the interpretation that the plan's language was intended to provide for the entry of a discharge at confirmation.

But even if the debtors did not receive a discharge at confirmation, Santander is still liable under § 524(i) for failing to properly apply and credit the debtors' payments made under the plan. Here, Santander repossessed the truck even though the Houliks had made every post-confirmation payment that was due as well as numerous pre-confirmation payments. *Collier's* bankruptcy treatise states that § 524(i) "is not limited to acts occurring after discharge," noting that this subsection was enacted to clarify that courts had continuing power "to remedy a creditor's failure to credit payments

---

[21] Section 1141(d)(1)(A).

[22] *See* § 1141(d)(5).

-8-

properly."[23] Even if the language in Article III of the Houlik plan and the terms of the confirmation order did not suffice to grant them a discharge, there can be little question that Santander's conduct offends § 524(i) and would be sanctionable accordingly.[24]

Santander also complains in its briefing that the debtors' failure to set forth either of these claims in its motion should be fatal to its case here. The Houliks' motion for sanctions for an automatic stay violation clearly did not state the precise claims under § 524 discussed above. That said, it is hard to see what prejudice Santander suffers here. At the hearing on reconsideration of the default contempt order, the Court raised the inapplicability of the stay to these proceedings. Moreover, actions to enforce the stay and to enforce a discharge are substantially similar.[25] Both involve the demonstration of willful conduct.[26] Both require demonstrating that the conduct resulted in material injury. Precisely the same facts and circumstances would have been presented here if this motion had been pled as a discharge violation or a § 524(i) violation. Both parties had an opportunity to present evidence and argument on the § 524 claim. The debtors' Motion may be

---

[23] Alan N. Resnick and Henry J. Sommer, Editors-in-Chief, 4 COLLIER ON BANKRUPTCY, ¶ 524.08 (16th ed. 2011).

[24] *See In re Easter Seals Tennessee, Inc.,* 2011 WL 1884169 (Bankr. M.D. Tenn. May 18, 2011) (Debtor sought sanctions against Ford Motor Credit Company for violating the discharge injunction pursuant to § 524(i).).

[25] A violation of § 524(i) requires proof that the creditor failed to properly credit payments in accord with the plan and improperly attempted to collect discharged debt. *In re Easter Seals of Tennessee, Inc., supra* at *3. (Creditor's mere communication of incorrect payoff amount to debtor was not a failure to properly credit plan payments and even if it were, where creditor takes no action to "collect" the debt, creditor does not violate § 524(i).). Here, of course, the Houliks have proven that Santander failed to properly credit their post-confirmation plan payments. Had Santander done so, the October 2010 cure notice would never have been sent. In addition, Santander acted to collect the debt when it wrongfully repossessed the truck.

[26] *See* COLLIER'S, *supra* at ¶ 524.08 (As in § 362(k)(1), willfulness under § 524(i) means that the creditor intended to commit the act (*i.e.,* credit the payments in the manner it did).).

-9-

reformed to conform to the evidence and construed as a motion to enforce the discharge injunction under § § 524(a)(2) and (i) and for appropriate contempt sanctions.[27]

Santander's conduct was essentially unexplained. Mr. Mooney testified that he thought the company had concluded the debtors had missed "two payments," though he could not identify which two payments.[28] In debtors' counsel's January 17, 2011 letter to Ms. Washburn, he states that a Santander representative had asserted to him that the Houliks failed to make the August and December 2010 payments.[29] But, at trial, Santander conceded that both these payments had been made. That concession is Santander's admission that it willfully failed to credit these payments in violation of § 524(a)(2) and § 524(i).[30] The only question remaining here is whether the Houliks suffered a "material injury" for which they can recover sanctions as a result of Santander's wrongful repossession of the truck.[31]

---

[27] Counsel for Santander acknowledged at the evidentiary hearing that this was the appropriate legal theory before the Court and that the Court retained jurisdiction to enforce the discharge. *Lomax v. Bank of America, N.A.,* 435 B.R. 362, 377-78 (N.D. W. Va. 2010) (Bankruptcy court could exercise discretion, in furtherance of judicial economy, to construe debtors' claim alleging violation of discharge injunction as claim alleging contempt of court.).

[28] Santander does not claim that it was unaware of the discharge injunction at the time it repossessed the Houliks' truck.

[29] Ex. X.

[30] To show a willful violation of the discharge injunction, movant must prove that the creditor knew the discharge injunction was applicable and intended the actions which violated the injunction. *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir. 1996); *In re Sandburg Financial Corp.,* 446 B.R. 793, 803 (S.D. Tex. 2011). Knowledge of the discharge injunction may be inferred where the creditor received notice of bankruptcy and of confirmation of the debtor's plan of reorganization. *In re Zilog, Inc.,* 450 F.3d 996 (9th Cir. 2006).

[31] *Zilog,* supra at 1007 (Party who knowingly violates discharge injunction can be held in contempt under § 105(a)); *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000) (Section 105(a) gives bankruptcy court contempt powers to enforce the discharge injunction and order damages or sanctions for debtor); *Lomax v. Bank of America, N.A.,* 435

-10-

*The Houliks' Damages*

This, unfortunately, is the weakest link in the Houliks' contempt case. They request damages of many different kinds and totaling in excess of $24,000, but have been unable to substantiate most of their claims. As outrageous as Santander's unwarranted discharge violation may be, it still falls to the debtors to demonstrate the extent to which they have been harmed by Santander's wrongful actions. Their claims fall into the following categories: lost income or profits, a lost cell phone, ratable cost of vehicle insurance, lost license plate, the cost of the storage unit where Mr. Houlik stored a trailer and larger equipment, the ratable portion of a city builder's license fee, the ratable portion of the liability insurance premium, physical damage to the vehicle during its repossession and wrongful detention, their attorneys fees, and punitive damages.

    a. *Lost Income/Profits*

The debtors introduced evidence of their income before and after the repossession. The Court could not discern from this evidence what portion was Mr. Houlik's income and what portion was Ms. Houlik's income. Mr. Houlik's contracting income as well as what Ms. Houlik receives from her work as a realtor, a substitute teacher, and a care-giver is all deposited in one account but the documents exhibited to the Court do not break out the income by source. Thus, the Court cannot determine what part of the Houliks' pre-repossession income was attributed to the construction business. Nor can the Court establish a baseline of what Mr. Houlik made before the repossession

---

B.R. 362, 377 (N.D. W. Va. 2010) (Violation of discharge injunction is punishable by contempt of court); *Mountain America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir. 1990) (recognizing civil contempt powers under § 105(a) for violation of automatic stay). *In re Easter Seals Tennessee, Inc., supra* (Debtor sought sanctions against creditor for violating the § 524(i) injunction).The Houliks have the burden of proving Santander's contempt by clear and convincing evidence. *In re Poindexter,* 376 B.R. 732 (Bankr. W.D. Mo. 2007).

and therefore cannot determine what he would have made but for the loss of the truck. Mr. Houlik also discussed four jobs that he bid and intended to perform in January, 2011, but which the repossession delayed or thwarted. Houlik had bid these jobs but as established on cross-examination, not all the bids were accepted. One of the jobs he performed in March after he recovered the truck.[32] Two of the jobs were done by another builder or by the owners themselves. The fourth job he commenced and completed in February without the truck.[33] In addition, Mr. Houlik conceded that he was not forced to turn away any construction job because he was without his truck. Absent better evidence than this, the Court cannot "value" what Houlik lost in the way of income or profits. The Court reluctantly concludes that while he was damaged, it cannot quantify the damages because they were not proven with reasonable certainty.[34]

        *b. Lost cell phone*

When Santander's agent, Johnson strong-armed Houlik and prevented him from recovering his possessions from the truck, among the things he lost was a phone charger. When he went to replace the charger, he learned that it was obsolete and he therefore could not charge his phone. This required him to buy a new phone from Verizon Wireless at a cost of $193.10 on January 3,

---

[32] The Mallory job in Oklahoma was for Mrs. Houlik's parents that was begun shortly before the truck was returned in March of 2011.

[33] The McBride job was for Houlik's uncle.

[34] Under Kansas law, damages for lost profits must be proven with reasonable certainty. *Vickers v. Wichita State University,* 213 Kan. 614, 620, 518 P.2d 512 (1974). Evidence of a history of past profitability is one method of showing lost profits. *Id.* Such damages may not be determined by speculation or guess. The evidence must be sufficient to enable the court to arrive at an approximate estimate of the loss. *New Dimensions Products, Inc. v. Flambeau Corp.,* 17 Kan. App. 2d 852, 859, 844 P.2d 768 (1993).

2011. He presented a receipt for that amount.[35] This loss was the proximate result of Santander's violation of the discharge injunction and may be recovered as damages.

*c. Vehicle insurance incurred*

Although Mr. Houlik did not have the use of his truck during the 80-day period before Santander returned it, he continued to maintain liability and casualty insurance on it as required by the terms of CitiFinancial's credit agreement at a cost of $93.92 per month.[36] He is entitled to recover three months' insurance, or $281.76 from Santander.

*d. Lost license plate*

The Houliks presented no evidence of the cost of a new license plate. Even the Court's careful review of the debtors' monthly reports did not reveal that amount. So, even though the Court finds that the debtors did not receive the license plate back, it has no evidentiary basis upon which to determine what replacing it might have cost.

*e. Cost of the storage facility*

Mr. Houlik claims that he should be reimbursed the rental of the storage unit he incurred during the 80-day period his truck was wrongfully detained. Had he been completely precluded from working as a result of the repossession, this might have some merit. But, as noted above, Mr. Houlik continued to work. All that prevented him from entering the storage facility was the missing key to a padlock, something that could have been remedied in five minutes with a bolt-cutter. In any event, he had to maintain this storage facility for his trailer and equipment whether or not he had a truck. Thus, whether or not his truck was repossessed, Houlik likely would have maintained the

---

[35] Exhibit L.

[36] Exhibit J.

-13-

Case 09-12159   Doc# 169   Filed 09/25/11   Page 13 of 17

storage unit. The Court declines to award damages for what is essentially business overhead.

*f. Ratable portion of the cost of a city builder's license*

This element of damages stands on similar footing as the storage unit costs. Houlik's contractor license is part of his overhead and was unaffected by Santander's repossession of the truck.

*g. Ratable portion of the cost of liability policy*

Houlik's commercial liability insurance cost during the 80-day period is also business overhead that did not result from repossession of the truck. The same reasoning explained with respect to the storage unit costs applies here. No damages will be assessed for this cost.

*h. Physical damage to the vehicle during its repossession and wrongful detention*

Mr. Houlik did not expend actual funds to repair his truck after he recovered it in March of 2011. He took it to Lonnie Nelson and directed him to estimate what it would cost to "fix everything," not just the damages he claims were caused by Santander. The estimate he provided does not correspond with the detailed appraisal of necessary repairs done by Santander immediately after the repossession. In the absence of persuasive proof of the pre-repossession condition of the vehicle, the Court cannot determine what scratches and dents were caused by Santander and therefore cannot award the costs of repairing the truck that Mr. Houlik requests.

*i. Attorneys fees*

The Houliks should recover their reasonable attorney's fees and expenses incurred as a result of Santander's misconduct. They shall submit a fee request within 14 days of the entry of this

-14-

order.[37]  The fee award should in no way be limited by the small amount of damages awarded here. The Court is satisfied that considerable legal time and effort went into dealing with the repossession and recovery of the truck, work that was proximately caused by Santander's willful misconduct.

> *j. Punitive damages.*

In general, discharge violations are punishable by bankruptcy courts as contempt under § 105(a).  When the misconduct shows either malevolent intent or a clear disregard of and disrespect for the court's orders, the court may award appropriate punitive damages.[38]  Here, Santander concedes that the Houliks had made all of the post-confirmation payments that were due.  The fact that its bankruptcy department was handling the Houliks' file suggests that it knew about their bankruptcy.  In any event, Santander makes no claim to the contrary.  Santander accepted their plan payments without complaint but failed to properly give the debtors credit for making them.  Mr. Mooney could not explain Santander's conduct and neither he nor his counsel demonstrated any remorse.

Santander willfully violated this Court's discharge order and caused the Houliks' damages. It sent its notice of right to cure to the wrong address.  When the Houliks attempted to reason with Darryl Johnson, he shoved Mr. Houlik away from the truck and took his truck and its contents. Santander failed to respond to the Houliks' counsel's entreaties to return the truck, made

---

[37] The fee application shall comply with this Court's Professional Fee and Expense Guidelines, Sections IV and V, found at www.ksb.uscourts.gov/images/ksb_chambers/REN_FeeGuidelines011102.pdf.

[38] *See In re Nibbelink,* 403 B.R. 113 (Bankr. M.D. Fla. 2009) (mortgagee's intentional and egregious actions warranted punitive damages of $15,000); *In re Poindexter,* 376 B.R. 732 (Bankr. W. D. Mo. 2007) (bank's clear disregard and disrespect of bankruptcy laws warranted punitive award in an amount equal to 20 percent of the sum received by the bank from sale of debtor's home).

-15-

immediately after the repossession. Even diligent efforts to contact Santander's counsel were not enough to prevent the vehicle being wrongfully detained for nearly three months. Only after this Court's default order came to Santander's attention did it begin to react. The willful and irresponsible actions of this creditor are reprehensible. Santander's conduct is yet another instance of a lender or servicer placing debtors in a defenseless position by hiding behind its faceless, opaque bureaucracy and ignoring the orders of the bankruptcy court. This Court will not countenance that conduct when it is proven, no matter how small the actual damages may be, because a confirmation order and the injunction of § 524(a)(2) as made applicable here by § 524(i) should supply valuable protection from just this sort of conduct, especially when the offending creditor neither regrets nor explains its actions.

Santander could not justify its erroneous belief that the debtors had missed two payments. Santander should be deterred from future willful violations of this or similar discharge injunctions and should be punished for its unreasonable conduct by a punitive award of $25,000, payable to the Houliks as a part of their damages in this case, or to be credited along with the rest of the damages, other than attorney's fees, against the remainder of the Houliks' plan payment obligation in respect of the truck.

Conclusion

For the reasons set forth above, the Court conforms the Houliks' Motion to the evidence and finds that Santander willfully violated their discharge by refusing to credit plan payments to their account and relying on a default they created or imagined, to wrongfully repossess their truck, causing them damages and exposing them to attorney's fees and expenses. This conduct violates § 524(a)(2) and § 524(i) and constitutes civil contempt of this Court. This Court therefore GRANTS

Case 09-12159    Doc# 169    Filed 09/25/11    Page 16 of 17

the conformed motion and finds that the debtors have been damaged by Santander in the amount of $474.86.[39]

In addition, the debtors are entitled to recover their reasonable attorney's fees and expenses incurred herein and their counsel shall, within 14 days of the entry of this Order, submit an application for same. Santander shall have 7 days thereafter to respond to that application after which time the Court will independently review and enter an order approving such fees and costs as it deems reasonable.

Finally, in view of Santander's unexplained and clear disregard for and disrespect of this Court's orders, and in an effort to discourage Santander from such future conduct in this jurisdiction, the Court grants a punitive sanction of $25,000 that may either be paid to the debtors or credited to the Houliks' obligation to Santander under the plan.

The costs of the proceedings on this Motion shall be assessed against Santander.

# # #

---

[39] $193.10 [cell phone replacement] + $281.76 [truck insurance premium] = $474.86.

Case 09-12159    Doc# 169    Filed 09/25/11    Page 17 of 17